# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ACCESS LIVING OF METROPOLITAN CHICAGO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:15-cv-02088 |
| BILL PREWITT, d/b/a/ BEST RENTS, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Bill Prewitt, d/b/a/ Best Rents', ("Best Rents'") motion to dismiss Plaintiff Access Living of Metropolitan Chicago's ("Access Living's") complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (R.10, Def.'s Mot. to Dismiss.) Specifically, Defendant alleges that Plaintiff has failed to satisfactorily plead a cause of action under the Fair Housing Act. For the reasons set forth below, the Court denies Defendant's motion to dismiss.

## BACKGROUND

Access Living is a center for independent living that helps persons with disabilities acquire housing in Chicago. (R.1, Pl.'s. Compl., ¶ 2–3.)[1] Access Living is also a qualified fair

---

[1] The facts presented in the Background are taken from the complaint and are presumed true for the purpose of resolving the pending motion to dismiss under Rule 12(b)(6). *See Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014*)*; *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

housing enforcement organization pursuant to 24 C.F.R. § 125.103 and conducts tests on housing providers to assess compliance with the Fair Housing Act. (*Id.* ¶¶ 3, 7.) Best Rents is a property management business owned by Bill Prewitt, based in the Chicago area. (*Id.* ¶ 8.) Mr. Prewitt owns a three-bedroom apartment located at 3251 S. Wood Street, Chicago, Illinois 60608 (the "Wood Apartment"). (*Id.*) Access Living conducted a fair housing test of the Wood Apartment at the center of this dispute. (*Id.*) Access Living brought this action against Best Rents on March 10, 2015. (*See* R.1.)

## I. Access Living's Fair Housing Test of Best Rents

On March 13, 2013, Access Living conducted a fair housing test designed to determine whether Best Rents would provide equal treatment to home seekers with disabilities and those without disabilities after receiving telephone inquiries. (*See* R.1, ¶ 22.) The test involved two callers: a "Non-Disabled tester" and a "Deaf tester". (*Id*.) Best Rents advertised the Wood Apartment in the *Chicago Reader* and provided a phone number and website. The advertisement described the Wood Apartment as a three-bedroom apartment located at the intersection of Archer and Wood in the Bridgeport neighborhood of Chicago. (*Id.* ¶¶ 22, 23.)

The Non-disabled tester was directed to call the housing provider on a regular phone, while the Deaf tester was instructed to call the housing provider using IP Relay. (*Id.* ¶ 23.) IP Relay is an internet-based Telecommunication Relay Service ("TRS") that allows people who are deaf or hard of hearing to communicate by telephone. (*Id.* ¶¶ 12, 17.) IP Relay requires a third party to read the deaf caller's typed text to the recipient of the call and transcribe the recipient's replies back to the deaf caller. (*Id.* ¶¶ 12-17.) This process (and other, similar TRS processes) takes additional time and effort. (*See id.* ¶¶ 14-20.)

### A. The Non-Disabled Tester's Experience

The Non-Disabled tester called Best Rents at the number listed on Best Rents' website. (*Id.* ¶ 24.) The Non-Disabled tester initially reached a voicemail recording, but did not leave a message. (*Id.*) Upon trying a second time, the Non-Disabled tester reached Best Rents and spoke with a person named Bill. (*Id.* ¶ 24–25.) The Non-Disabled tester asked if the Wood Apartment was available, and Bill replied that it was. (*Id.* ¶ 25.) Bill asked how many people would be living there, to which the Non-Disabled tester replied her inquiry was for her husband and herself. (*Id.*) Bill asked why they needed three bedrooms, to which the Non-Disabled tester replied that she would like an office and a guest room. (*Id.*) Bill then directed the Non-Disabled tester to view a video of the Wood Apartment on the Best Rents website and informed her of a showing that coming Saturday. (*Id.*)

### B. The Deaf Tester's Experience

Just a few hours prior to the Non-Disabled tester's call, a Deaf tester called Best Rents—using IP Relay—at the number listed in the *Chicago Reader* advertisement. (*Id.* ¶ 26.) The Deaf tester reached a voicemail that described details of Best Rents' property listings. (*Id.*) The Deaf tester then called a different number listed on the Best Rents website and Defendant answered. (*Id.* ¶¶ 27, 28.) When asked about the availability and rental price of the Wood Apartment, Defendant replied, "It's all online, it's $850.00 a month. It's very, very clear." (*Id.*) The Deaf tester then inquired about the security deposit and Defendant replied, "There is no security. I'm in a meeting right now. Have her go online." (*Id.*) Defendant then hung up. (*Id.*) Over the course of two days, the Deaf tester called Best Rents three times and receiving no answer, left the same voicemail each time. (*Id.* ¶¶ 29, 30.) The voicemails stated, "Hello, I'm interested in three bedrooms apartment [sic] at Archer at [sic] Wood. I want to know which utilities the tenant

is responsible for and approximate cost of the utilities. I'm Deaf, so please email me." (*Id.*) On March 15, 2014, the Deaf tester received an email from "Bill" at Best Rents, bestrents@aol.com. (*Id.* ¶ 30.) The email stated: "There are no utilities included with the apartment. We don't have any apartments that are setup for a handicapped person so none of our apartments are handicapped safe. Thanks for your interest." (*Id.*)

## II. Access Living's Allegations under the Fair Housing Act

Access Living alleges that Best Rents' actions unfairly discriminated against home seekers who are deaf or hard of hearing. (R.1, ¶ 32.) The Fair Housing Act prohibits discrimination on the basis of race, gender, national origin, and religion in the provision of housing. (*See* R.1, ¶ 33; *see also* Civil Rights Act of 1968, Pub. L. No. 90–284, 82 Stat. 73; *see also* 42 U.S.C. § 3601 *et seq*.) In 1988, Congress extended the law's protections to people with disabilities. (*See* R.1, ¶ 33; *see also* Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619; *see also* 42 U.S.C. § 3604(f).) Specifically, under the Fair Housing Act, it is unlawful to, among other things: (1) make any statement "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on disability" (42 U.S.C. § 3604(c)); (2) represent to any person because of disability "that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available" (*id.* at § 3604(d)); (3) discriminate in the sale or rental of or to otherwise make unavailable or deny a dwelling to a buyer or renter because they have a disability (*id.* at §3604(f)(1)(A)); or (4) discriminate against any person in the terms, conditions, or privileges or sale or rental of a dwelling because the person has a disability (*id.* at § 3604(f)(2)). (*See* R.1, ¶ 34.) Plaintiff asserts that Defendant acted with intentional or in reckless disregard of the alleged provisions. In addition, Plaintiff requests several different avenues of relief from the Court, including, but not

4

limited to, ordering Defendant to: participate in fair housing training and disability awareness training; list a business email address on all promotional materials; and pay actual damages, punitive damages, and attorney's fees. (*Id.* ¶ 36.)

**LEGAL STANDARD**

Defendant moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* R.10. "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted). "But the proper question to ask is still '*could* these things have happened,

not *did* they happen.'" *Carlson*, 758 F.3d at 827 (*citing Swanson v. Citibank, N.A.,* 614 F.3d 400, 404–05 (7th Cir. 2010)).

## ANALYSIS

Defendant argues that the Court should dismiss Plaintiff's complaint because Plaintiff made no efforts at conciliation prior to bringing suit. (*See* R.10, at 5-7; R.17, Def.'s Reply, at 5.) Defendant also contends that the Court should dismiss Plaintiff's complaint for failure to state a claim because Defendant's actions were not discriminatory. (*See* R.10, at 7-10; R.17, at 3-6.) Plaintiff responds that conciliation efforts are not a prerequisite to bringing suit under the Fair Housing Act and that Defendant's arguments on the merits are not appropriate at this stage. (*See* R.16.)

**I.  Plaintiff Is Not Required to Attempt Conciliation Prior to Filing Suit under the Fair Housing Act**

Defendant asserts that the Court should dismiss Plaintiff's claims due to its failure to attempt conciliation in advance of filing this lawsuit. (*See* R.10, at 5–7; R.17, at 5.) Defendant relies on *Mach Mining, LLC. v. Equal Employment Opportunity Commission*, ___U.S.___, 135 S Ct. 1645, ___L.Ed.2d___ (2015) to support its position. (*See* R.10, at 6.) Defendant's reliance, however, is misplaced. In *Mach Mining*, the Supreme Court addressed whether and how courts may review the conciliation efforts of the Equal Employment Opportunity Commission ("EEOC") before it sues an employer for discrimination. *Id.* at 1648. The Supreme Court held that a court may review whether the EEOC satisfied its statutory obligation to attempt conciliation before filing suit. *Id.* at 1649. Title VII of the Civil Rights Act of 1964 "sets out a detailed, multi-step procedure through which the Commission enforces the statute's prohibition on employment discrimination." *Id.* (*citing* Title VII, 78 Stat. 241, 42 U.S.C. § 2000e *et seq*). In those instances where the EEOC determines that it has reasonable cause to think that the

complainant's allegation has merit, the EEOC "must first 'endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.'" *Id.* (*citing* 42 U.S.C. § 2000e-5(b)). The Supreme Court noted that Title VII's imposition of a duty on the EEOC to attempt conciliation of a discrimination charge prior to filing a lawsuit is "a key component to the statutory scheme" in pursuit of "bring[ing] employment discrimination to an end." *Id.* at 1651.

Defendant effectively seeks to impose the EEOC's pre-lawsuit statutory obligations under Title VII of the Civil Rights Act of 1964 upon a private party suing for discriminatory housing practices under Title VIII of the Civil Rights Act of 1968 (Fair Housing Act). (*See* R.10, at 5–6.)[2] The Fair Housing Act is codified at 42 U.S.C. § 3601 *et seq*. and defines a discriminatory housing practice as "an act that is unlawful under Section 3604, 3605, 3606, or 3617." (42 U.S.C. § 3602.) The *Mach Mining* court makes no reference to the Fair Housing Act or any of its statutory provisions. *See generally Mach Mining*, 135 S.Ct. 1645. Defendant directs the Court's attention to Section 3609, which provides that the Secretary of Housing and Urban Development "shall commence such educational and conciliatory activities as in his judgment will further the purposes of this subchapter." (42 U.S.C. § 3609; § 3602(a).) While acknowledging "that the Secretary of Housing and Urban Development is not bringing this action," Defendant requests that the Court require Plaintiff to "meet at least the spirit of the law when it comes to conciliation, not the ambush which it has filed." (R.10, at 5.) Defendant cites

---

[2] This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a). (*See* R.1, ¶ 9.) Section 3613(a) allows an "aggrieved person" to bring a civil action in an appropriate district court no later than 2 years after the occurrence of the alleged discriminatory practice. 42 U.S.C. § 3613(a). An "aggrieved person" is any person who claims to have been injured by a discriminatory housing practice, or any person who believes that such person will be injured by a discriminatory housing practice that is about to occur. 42 U.S.C. § 3602(i). Defendant does not dispute Plaintiff's status as an "aggrieved person" under the Fair Housing Act.

7

no case law or statutory authority for imposing such an educational or conciliation requirement on a private party under the Fair Housing Act. Furthermore, as Plaintiff notes, "[s]ection 3609 has never been cited by any court for the proposition that the Secretary or the United States can only bring suit after engaging in the 'educational and conciliatory activities' detailed in that section." (*See* R.16, at 9.) Indeed, the Supreme Court has explicitly addressed the Fair Housing Act as providing two alternative mechanisms for redress, one directed to immediate filing of suit and the other directed to conciliation efforts, stating:

> The most plausible inference to be drawn from [the Fair Housing Act] is that Congress intended to provide all victims of [Fair Housing Act] violations two alternative mechanisms by which to seek redress: immediate suit in federal district court, or a simple, inexpensive, informal conciliation procedure, to be followed by litigation should conciliation efforts fail.

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 104 (1979); *see also Meyer v. Holley*, 537 U.S. 280, 288 (2003) (citing *Gladstone*, 441 U.S. at 104), *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 264 (7th Cir. 1996) (discussing how mitigation efforts are not necessary before filing a Fair Housing Act claim). Accordingly, the Court will not impose a requirement for conciliation efforts by a private party as a prerequisite for filing a lawsuit permitted under the Fair Housing Act.[3]

## II. Plaintiff Has Adequately Pleaded Violations of the Fair Housing Act

Plaintiff's complaint alleges Defendant violated three specific subsections of Section 3604. (R.1, ¶ 35.) Rather than analyzing the allegations relevant to each subsection, Defendant

---

[3] Defendant argues that Plaintiff's failure to conciliate in conjunction with its filing of this lawsuit three days prior to expiration of the statute of limitations is grounds for dismissal under the doctrine of *laches*. (*See* R.10, at 5-6; *see also* R.17, 3, 6.) This argument is without merit, however, because there is no dispute that Plaintiff filed within the permissible window of the statute of limitations and Defendant does not argue it has suffered any harm or resulting prejudice by any inexcusable delay. *See Kansas v. Colorado*, 514 U.S. 673, 688, 115 S.Ct. 1733, 131 L.Ed.2d 759 (1995); *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006); *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002).

8

instead argues that Mr. Prewitt's actions were not discriminatory and that any supposed discrimination was merely a misunderstanding. (*See* R.10, at 7–10; R.17, at 3–6.) Because Defendant argues the merits of the case and not any pleading deficiencies, Defendant's arguments fail at this stage of the litigation.

Federal Rule of Civil Procedure 8 governs Access Living's pleading requirements. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (applying Rule 8 pleading standards to the plaintiff's claims of racial discrimination in violation of the Fair Housing Act and Rule 9 heightened pleading standards to the plaintiff's fraud claims). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. Proc. 8(a)(2). As such, "the statement need only give the defendant fair notice of what the … claim is and the ground upon which it rests." *Id.* at 404 (*citing Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1082 (2007)). Defendant concedes that he fully understands the nature of the allegations set forth in Access Living's complaint, but nonetheless argues that the allegations "do not amount to discrimination." (*See* R.17, at 1; *id.* at 3 ("[I]t is Defendant's position that he understands the allegations, however, the facts which Plaintiff presents to him simply do not amount to discrimination and he has not discriminated against anyone"); *see also* R.10, at 7 ("The actions pled do not amount to a violation of the Fair Housing Act"); *id.* at 9 ("Mr. Prewitt's conduct as alleged was not discriminatory and thus Plaintiff has failed to state a cause of action upon which relief can be granted").)

Under Rule 8, the pleader's responsibility is to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 663. "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson*, 614 F.3d at 404. "The merits of a claim [should] be sorted out

9

during a flexible pretrial process and, as appropriate, through the crucible of trial." *Twombly*, 550 U.S. at 575. Whether the allegations, and the evidence alleged in support, ultimately prove a claim for discrimination is a matter for another day.

Access Living has sufficiently pleaded its claims alleging violations of the Fair Housing Act. Namely, the allegations identify the type of discrimination that allegedly occurred (disability discrimination), the who (Best Rents and Mr. Prewitt), the what (specific words used by the testers and by Defendant in communicating about the property), the when and where (dates and times of telephone conversations in connection with a known Deaf tester's effort in March 2013 to rent a property), and the how (e.g., withholding information about the scheduled apartment showing from the Deaf tester, hanging up on the Deaf tester, failing to respond to the Deaf tester, and dismissing the Deaf tester with specific statements). (*See* R.1, ¶¶ 21-31, 35.) Access Living further alleges, and Defendant admits, that Defendant was aware of the Deaf tester's disability. (*See* R.10, at 8 ("we are simply provided an email which Mr. Prewitt was sending to someone he knew was deaf"); R.17, at 2 ("Mr. Prewitt's email responds to a known deaf person's specific questions ….").) It is plausible that Mr. Prewitt failed to offer information to the Deaf tester about the apartment showing, hung up on the Deaf tester, failed to respond to the Deaf tester's voicemail messages, and told the Deaf tester that the apartment was not "handicapped safe," all in order to avoid renting the apartment. It is not for the Court to determine, at this stage, whether Access Living's version is the only reasonable version of the facts or even whether its version is more likely than not. *See Swanson,* 614 F.3d at 404. ("For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences"). Rather, at this stage, the Court determines whether the facts, as alleged, plausibly

10

state a claim for relief. As such, accepting all allegations of the complaint as true and taking all reasonable inferences in favor of Access Living, the allegations sufficiently state a claim under the Fair Housing Act alleging discrimination based on disability. *See id.* at 405 (finding allegations that alleged the type of discrimination, the identity of the discriminator, and the timeframe of the alleged discriminatory act, sufficient to state a claim of racial discrimination under the Fair Housing Act); *see also Luis v. Smith Partners & Assocs., Ltd.*, No. 12-C-2922, 2012 WL 5077726, at *2 (N.D. Ill. Oct. 18, 2012) (relying on *Swanson* to find the plaintiff's allegations identifying the type of discrimination that occurred, by whom, and when, survived a Rule 12(b)(6) motion as they adequately alleged discrimination under Section 3604 of the Fair Housing Act).

      **A.**     **Plaintiff Adequately Pleads a Section 3604(c) Violation, as an "Ordinary Listener" Might Infer that Defendant's Statements Indicated a Preference Against the Disabled**

Plaintiff alleges Best Rents violated Section 3604(c), which makes it unlawful to make "any … statement … with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on … handicap, or an intention to make any such preference, limitation, or discrimination." (42 U.S.C. § 3604(c).) In order to establish a violation of Section 3604(c), Access Living must ultimately show that: (1) Best Rents made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against the tester on the basis of her status as a disabled individual. *See White v. U.S. Dept. of Housing and Dev.*, 475 F.3d 898, 904 (7th Cir. 2007); *see also* Fair Housing Amendments Act of 1988, Pub. L. No. 100–430, 102 Stat. 1619 (extending the FHA to proscribe discrimination against disabled individuals). Defendant does not assert that Access Living failed to allege that Best Rents or Mr. Prewitt made a statement,

11

nor does Defendant disagree that the statement was made with respect to the sale or rental of a dwelling. Accordingly, the Court presumes Defendant takes issue with whether the statements provide an indication of a preference against a disabled individual.

Actions prohibited under Section 3604(c) include using words or phrases which convey that dwellings are not available to a particular group of persons because of a handicap and expressing to prospective renters or any other persons a preference or a limitation on any renter because of familial status. *See White*, 475 F.3d at 906. To determine whether a statement indicates impermissible discrimination on the basis of handicap in violation of Section 3604(c), courts apply an "ordinary listener" standard. *See White*, 475 F.3d at 905-906. The inquiry under this objective standard is whether the alleged statement would suggest to an "ordinary listener" that a person with a handicap is preferred or disfavored for the housing in question. *See id*. (*citing Jancik v. Dep't of Housing & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995) (discussing how the subjective intent of the person making the statement is not a necessary element in finding a violation of Section 3604(c)). The "ordinary listener 'is neither the most suspicious nor the most insensitive of our citizenry.'" *See White*, 475 F.3d at 906 (*citing Jancik*, 44 F.3d at 556, n. 4). The "ordinary listener" standard considers only whether a member of the protected class would be discouraged or steered away from pursuing the housing because of the statement. *See Jancik*, 44 F.3d at 556.

In *Jancik*, the Seventh Circuit found a defendant's statement that "he did not want any children in the home" would suggest to an "ordinary listener" a preference against families. *Jancik*, 44 F.3d at 556. Similarly, in *White,* the Seventh Circuit found that when a defendant refused to rent an apartment to the plaintiff upon learning she was a single mother of two children, despite not having any information about the plaintiff's financial status, an "ordinary

12

listener" would find the defendant's assessment of the plaintiff's inability to pay rent indicative of a preference against families. *White*, 475 F.3d at 906. Here, Plaintiff alleges that Defendant—aware of the Deaf tester's disability—sent an email responding to the Deaf tester's inquiry, stating that the apartment was not set up for disabled persons and, therefore, was not handicapped safe. (R.1, ¶ 31). These allegations contain statements that, based on a reasonable inference, could have suggested to an ordinary listener that Defendant disfavored a handicap tenant for the housing in question. These allegations, therefore, are enough to satisfy the "ordinary listener" standard, measured by plausibility. In other words, it is plausible that an "ordinary listener" may draw the inference that Defendant may prefer to avoid renting the Wood Apartment to a disabled or deaf individual. *See e.g., White*, 475 F.3d at 905-906; *Interfaith Housing Ctr. of the N. Suburbs v. Bernsen,* No. 11-cv-01146, 2011 WL 2712587 (N.D. Ill. 2011) (denying the defendant's motion to dismiss because an ordinary listener could have interpreted the defendant's statements that "the building was not suitable for families" and "designed for students", as a preference to not rent to families). As such, Plaintiff's allegations are sufficient to allege a violation of Section 3604(c).

### B. Plaintiff Adequately Pleads a Section 3604(d) Violation Based on Defendant's Statements Regarding Housing Availability

Under Section 3604(d), it is illegal to represent to someone that housing is unavailable, when in fact it is available, because that person has a disability. (*See* 42 U.S.C. §3604(d).) The section is intended to afford a legal right to all persons to have access to truthful housing information. *See Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990) ("The statute creates a right to be free from … misrepresentations") (*quoting Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374 (1982)); *see also Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 296-97 (7th Cir. 2000) (*citing Dwivedi*, 895 F.2d at 1526) (recognizing provisions of the Fair

13

Housing Act that forbid false statements that housing is unavailable to a person because of his race).

In *Havens*, the Supreme Court held that an African-American plaintiff's complaint satisfactorily alleged a Section 3604(d) violation when she was told multiple times that housing was not available during test calls, whereas test calls made by white testers were told that the housing was available. *Havens Realty Corp*, 455 U.S. at 374. Here, taking all inferences in Plaintiff's favor, the complaint contains specific references to the preferential treatment received by the Non-Disabled tester and the misrepresentations made to the Deaf tester. (R.1, ¶¶ 24–31.) For example: (1) the Non-Disabled tester was offered an apartment tour and the Deaf tester was not (*id.* ¶¶ 25–31); (2) Defendant hung up on the Deaf tester (*id.* ¶ 28); and (3) Defendant's email to the Deaf tester said the apartment was inappropriate for the handicapped. (*id.* ¶ 31.) Drawing all reasonable inferences in favor of Plaintiff, it is plausible that Defendant may have misrepresented the availability of the Wood Apartment because of the Deaf tester's disability in violation of Section 3604(d).

### C. Plaintiff Adequately Pleads Section 3604(f) Violations

Section 3604(f) of the Fair Housing Act makes it illegal to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer" (42 U.S.C. § 3604(f)(1)(A)), or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" (*id.* at 3604(f)(2)), because that person has a disability. Discrimination violating the Fair Housing Act may arise from disparate treatment (i.e. intentional discrimination), or disparate impact (i.e. when a facially neutral policy falls unfairly harms a protected group). *See Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009); *Kormoczy v.*

*Sec'y, United States Dep't of Hous. & Urban Dev. ex rel. Briggs*, 53 F.3d 821, 823-24 (7th Cir. 1995).

Plaintiff alleges that "Defendant's actions were intentional and/or in reckless disregard of the [Fair Housing Act] provisions." (R.1, ¶ 36.) Plaintiff argues that the complaint not only meets the pleading standards, but presents a *prima facie* case for intentional discrimination. (*See* R.16, at 6-8.) A "discriminatory housing practice" is defined by the Fair Housing Act as "an act that is unlawful under section 3604, 3605, 3606 or 3617 of this title." 42 U.S.C. § 3602. In order to determine whether a plaintiff has sufficiently pleaded a discriminatory housing practice, a plaintiff needs to at least identify the type of discrimination that allegedly occurred, who brought about that discrimination, and when that discrimination took place. *See Swanson*, 614 F.3d at 405. As discussed above in Section II, Plaintiff's complaint achieves this goal, alleging the type of discrimination, who acted in an allegedly discriminatory manner, when the alleged discrimination took place and how the alleged discrimination was conducted. Accordingly, Plaintiff has sufficiently pleaded a violation of Section 3604(f) of the Fair Housing Act.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is denied.

**DATED:** June 29, 2015

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge